James F. Speyer (SBN 133114)
James.Speyer@arnoldporter.com
ARNOLD & PORTER
KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017-5844
Tel: (213) 243-4000 / Fax: (213) 243-4199

Norman M. Leon (*pro hac vice*)
Norman.Leon@dlapiper.com
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
Tel: (312) 368-4000 / Fax: (312) 236-7516

Matthew D. Grant (*pro hac vice)*
Matthew.Grant@arnoldpoter.com
ARNOLD & PORTER
KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Tel: (213) 836-8000 / Fax: (212) 836-8689

Matthew J. Iverson (*pro hac vice*)
Matthew.Iverson@dlapiper.com
DLA Piper LLP (US)
33 Arch Street
Boston, MA 02110
Tel: (617) 406-6000 / Fax: (617) 406-6100

Attorneys for Defendant 7-Eleven, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

SERGE HAITAYAN, et al.,

            Plaintiffs,

    vs.

7-ELEVEN, INC., a Texas corporation,

            Defendant.

Case No. 2:17-cv-7454 DSF (AS)
Case No. 2:18-cv-5465 DSF (AS)

**7-ELEVEN, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW (L.R. 16-4)**

# TABLE OF CONTENTS

**Page**

I.    CLAIMS AND DEFENSES (L.R. 16-4.1) ........................................................1

    A.    Plaintiffs' Claims.........................................................................................1

        1.    Cal. Labor Code § 2802 ...............................................................1

        2.    Declaratory Judgment That Releases Are Invalid and
        Unenforceable ..............................................................................12

        3.    Cal. Bus. & Prof. Code §17200 ..................................................15

    B.    7-Eleven's Affirmative Defenses and Counterclaim ...............................15

        1.    Affirmative Defense: Release......................................................15

        2.    Affirmative Defense: Estoppel ....................................................15

        3.    Affirmative Defense: Waiver.......................................................16

        4.    Affirmative Defense: Statute of Limitations ...............................17

        5.    Affirmative Defense: Unclean Hands...........................................18

        6.    Affirmative Defense: Joint Employers .........................................19

        7.    Counterclaim: Declaratory Judgment ...........................................19

II.   ANTICIPATED EVIDENTIARY ISSUES (L.R. 16-4.1 (H)) ........................21

III.  BIFURCATION OF ISSUES (L.R. 16-4.3) ...................................................21

IV.   JURY TRIAL (L.R. 16-4.4) ...........................................................................22

V.    ATTORNEYS' FEES (L.R. 16-4.5) ...............................................................22

VI.   ABANDONMENT OF ISSUES (L.R. 16-4.6)................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Aguilar v. Zep*,
  Case No. 13-cv-00563, 2014 WL 1900460 (N.D. Cal. May 12, 2014) ................ 14

*Baker v. Baker*,
  Case No. 16-cv-08931 VAP, 2018 WL 3216509 (C.D. Cal. June 27,
  2018) .......................................................................................................... 13

*Bear, LLC v. Marine Grp. Boat Works, LLC*,
  Case No. 3:14-CV-02960-BTM, 2015 WL 4255061 (S.D. Cal. July
  14, 2015) ................................................................................................... 20

*Brandon v. National R.R. Passenger Corp. Amtrak*,
  Case No. CV 12-5796 PSG, 2013 WL 800265 (C.D. Cal. Mar. 1,
  2013) .......................................................................................................... 17

*Carpet Supermarket, Inc. v. Nat'l Fire Ins. Co. of Hartford*,
  Case No. CV 09-4951 GAF, 2009 WL 10675718 (C.D. Cal. Sept. 17,
  2009) .......................................................................................................... 16

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
  826 F.2d 837 (9th Cir. 1987) ...................................................................... 18

*GTE Sylvania v. Continental T.V., Inc.*,
  537 F.2d 980 (9th Cir. 1976) ........................................................................ 3

*Kremen v. Cohen*,
  337 F.3d 1024 (9th Cir. 2003) .................................................................... 14

*Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*,
  750 F.2d 731 (9th Cir. 1984) ................................................................. 5, 21

*Marks v. Am. Airlines, Inc.*,
  313 Fed. Appx. 933 (9th Cir. 2009) ........................................................... 16

*McLeod v. Bank of Am., N.A.*,
  Case No. 16-CV-03294-EMC, 2017 WL 6373020 (N.D. Cal. Dec.
  13, 2017) ...................................................................................................... 2

*Patel v. 7-Eleven, Inc.*,
   Case No. 17-11414-NMG, 2020 WL 5440623 (D. Mass. Sept. 10,
   2020) ...................................................................................................... 8

*POM Wonderful LLC v. Coca Cola Co.*,
   166 F. Supp. 3d 1085 (C.D. Cal. 2016) ................................................. 18

*Rembrandt Patent Innovations LLC v. Apple Inc.*,
   2015 WL 8607390 (N.D. Cal. Dec. 13, 2015) ........................................ 5

*Richtek Tech. Corp. v. uPi Semiconductor Corp.*,
   Case No. C 09-05659 WHA, 2016 WL 1718135 (N.D. Cal. Apr. 29,
   2016) ...................................................................................................... 5

*Van Gessel v. Moore*,
   Case No. 1:18-cv-01478-DAD-GSA-PC, 2021 WL 106469 (E.D.
   Cal. Jan. 12, 2021) .............................................................................. 13

**State Cases**

*Aleman v. Airtouch Cellular*,
   209 Cal. App. 4th 556 (2012) .............................................................. 14

*Cassady v. Morgan, Lewis & Bockius LLP*,
   145 Cal. App. 4th 220 (2006) ................................................................ 2

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .......................................................................... 15

*Chundu v. Cork*,
   Case No. G55326, 2018 WL 6039686 (Cal. Ct. App. Nov. 19, 2018) ........ 15

*Cislaw v. Southland Corp.*,
   4 Cal. App. 4th 1284 (1992) ..........................................................2, 3, 4

*Cuadra v. Millan*,
   17 Cal. 4th 855 (1988) ............................................................................ 5

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
   42 Cal. 4th 554 (2007) .....................................................................11, 12

*Guthrie v. Times-Mirror Co.*,
   51 Cal. App. 3d 879 (1975) .................................................................. 20

iii

*Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga*,
　　175 Cal. App. 4th 1306 (2009) ...................................................................20

*Moore v. Rogers*,
　　157 Cal. App. 2d 192 (1958) ......................................................................14

*Patterson v. Domino's Pizza, LLC*,
　　60 Cal. 4th 474 (2014) .................................................................................3

*People v. Uber Techs., Inc.*,
　　56 Cal. App. 5th 266 (2020) ......................................................................6, 7

*Roesch v. De Mota*,
　　24 Cal. 2d 563 (1944) .................................................................................16

*S.G. Borello & Sons, Inc. v. Department of Industry Relations*,
　　48 Cal. 3d 341 (1989) ........................................................................2, 3, 4, 7

*Samuels v. Mix*,
　　22 Cal. 4th 1 (1999) .....................................................................................5

*Schumm by Whyner v. Berg*,
　　37 Cal. 2d 174 (1951) .................................................................................14

*Sebago v. Boston Cab Dispatch, Inc.*,
　　28 N.E.3d 1139 (Mass. 2015) ......................................................................8

*USS-Posco Indus. v. Case*,
　　244 Cal. App. 4th 197 (2016) ....................................................................12

*Villacres v. ABM Industries, Inc.*,
　　189 Cal. App. 4th 562 (2010) ................................................................13, 14

*Wind Dancer Production Group. v. Walt Disney Pictures*,
　　10 Cal. App. 5th 56 (2017) .........................................................................16

**Statutes**

Cal. Bus. & Prof. Code § 17200 ..............................................................15, 17, 22

Cal. Bus. & Prof. Code § 17203 .......................................................................17

Cal. Bus. & Prof. Code § 17208 .......................................................................17

Cal. Bus. & Prof. Code § 20028 .........................................................................3

iv

Cal. Civ. Code § 1576 ........................................................................... 20

Cal. Civ. Code § 1578 ........................................................................... 20

Cal. Code Civ. Proc. § 338 .................................................................... 17

Cal. Corp. Code § 31001 ......................................................................... 3

Cal. Corp. Code § 31005(a) ................................................................. 3, 7

Cal. Labor Code § 98.6 .......................................................................... 15

Cal. Labor Code § 110.25 ...................................................................... 15

Cal. Labor Code § 206.5 ........................................................................ 15

Cal. Labor Code § 2775 .................................................................... 6, 7, 8

Cal. Labor Code § 2802 ................................................................... *passim*

Cal. Labor Code § 2804 ......................................................................... 15

Civil Code § 1969 .................................................................................. 12

**Other Authorities**

16 C.F.R. § 436.1(h)(2) ............................................................................ 7

Restatement (Second) of Contracts § 261 (1981) ................................. 19

Pursuant to L.R. 16-4 and the Court's Orders of August 21, 2020 (Dkt. 235) and January 21, 2021 (Dkt. 269), Defendant/Counterclaim-Plaintiff 7-Eleven, Inc. ("7-Eleven") hereby submits its Memorandum of Contentions of Fact and Law.

## I.      CLAIMS AND DEFENSES (L.R. 16-4.1)

Plaintiffs have been unclear on the claims they are pursuing. This week they told the Court that "the only claim left for trial in March is Plaintiffs' Section 2802 claim." Dkt. 279 at 1.[1] Last week they told 7-Eleven that they are pursuing their § 2802 claim, as well as claims for a declaratory judgment invalidating the releases they signed, and a purely derivative claim for violation of the Unfair Competition Law ("UCL"). *See* Plaintiffs' Contentions of Fact and Law (attached hereto as Ex. A) at 3-5. The only claim they have made clear they are *not* pursuing is their wage order claim. *See* Dkt. 282 at 4 n.1. Therefore, out of an abundance of caution, in this memorandum 7-Eleven discusses the § 2802 claim, the UCL claim and the declaratory relief claim.

7-Eleven, in addition to its defenses, asserts a conditional counterclaim seeking to void Plaintiffs' Franchise Agreements if the Court determines that Plaintiffs are employees rather than independent contractors.

### A.      <u>Plaintiffs' Claims</u>

#### 1.      <u>Cal. Labor Code § 2802</u>

a.      <u>**Summary**</u>: Plaintiffs cannot prevail on this claim because they cannot prove they are 7-Eleven's employees, and, even assuming they are employees, they cannot satisfy the requirements of § 2802.

b.      <u>**Elements**</u>: California Labor Code § 2802 provides in relevant part that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802(a). "The elements of a claim under Section 2802 are: (1) the employee made expenditures or incurred losses; (2) the expenditures

---

[1]      Unless otherwise noted, all "Dkt." citations are to the docket in *Haitayan I* (Case No. 17-cv-07454 DSF (AS)).

or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were reasonable and necessary." *McLeod v. Bank of Am., N.A.*, Case No. 16-CV-03294-EMC, 2017 WL 6373020, at *5 (N.D. Cal. Dec. 13, 2017); *accord Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 230 (2006).

### c.   Key Evidence in Opposition to Claim and Related Issues of Law:

#### i.   *The Borello Test Applies to Plaintiffs' § 2802 Claim, and Plaintiffs Cannot Satisfy that Test*

As this Court recently held, California's new misclassification test – the *Dynamex* test – does not apply to Plaintiffs' claims under Labor Code § 2802. Dkt. 275 at 9-10. Instead, the applicable test is that set forth in *S.G. Borello & Sons, Inc. v. Department of Industry Relations*, 48 Cal. 3d 341 (1989). *See* Dkt. 275 at 9-10 ("the *Borello* test applies to Plaintiffs' Labor Code claim").

Plaintiffs will not be able to satisfy that test. Under *Borello*, "'[t]he most significant factor in determining whether … a person performing services for another is an employee or an independent contractor is the right to control the manner and means of accomplishing the result, that is, the details of the work.'" *Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1292 (1992) (quoting *Toyota Motor Sales U.S.A., Inc. v. Superior Court*, 220 Cal. App. 3d 864, 873 (1990) (ellipsis in original)). The secondary factors include the right to terminate at will (which is indicative of an employment relationship), and:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Borello*, 48 Cal. 3d at 351.

None of these factors support transforming the parties' franchise relationship into one of employer-employee. With respect to the control factor, the testimonial and documentary evidence will show that Plaintiffs control the day-to-day operations of their franchises. Plaintiffs work when they want and exercise total control over all employment practices—including the hiring, firing, wages, discipline, scheduling, and staffing of their many employees. In addition, Plaintiffs determine how they want to merchandise their stores, how to price the products they choose to sell, and how to promote those products. Further, they only participate in those national promotions which they conclude make sense for their respective businesses, and some run their own promotions. The evidence will also show that, while 7-Eleven makes certain recommendations about their operations, Plaintiffs only follow them if they think they make sense for their respective businesses. *See Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 497 (2014) (characterizing the relationship between 7-Eleven and its franchisees as the converse of one in which the franchisor exercises too much control and stating that the 7-Eleven franchisee in the *Cislaw v. Southland Corp.* case "possessed almost *all* operational control" (emphasis in original)).

With respect to the secondary factors, the testimonial, documentary, and expert evidence will establish that:

● Plaintiffs are engaged in a distinct "occupation," as they own franchises that they are entitled to sell (Cal. Bus. & Prof. Code § 20028), have sole control over their labor relations, and file their tax returns as sole proprietors. Notably, in defining what a franchise is, the California legislature has repeatedly characterized franchises as "businesses" and the relationship created between a franchisor and a franchisee as a "business relationship." Cal. Corp. Code §§ 31001, 31005(a)(2); *see also GTE Sylvania v. Continental T.V., Inc.*, 537 F.2d 980, 999 (9th Cir. 1976) (franchising "creates a class of *independent businessmen*; it provides the public with an opportunity to get a uniform

product at numerous points of sale from small independent contractors, rather than from employees of a vast chain" (emphasis added)).

● Operating franchises requires skills, such as the effective merchandising and pricing of products and the proper handling of labor issues – steps that Plaintiffs concede they take.

● 7-Eleven does not supply the instrumentalities and place of work. Other than Mr. Haitayan, who owns his store, Plaintiffs purchase their stores' inventory and lease their stores and equipment from 7-Eleven.

● Plaintiffs are not paid – either by time or by the job. Like business owners, Plaintiffs retain the gross profits their stores earn less the fees due 7-Eleven under the Franchise Agreements.

● As a matter of contract and California law, 7-Eleven does not have the right to terminate its agreements with Plaintiffs at will. *See Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1295 ("Did Southland have the right to terminate the relationship at will?  Clearly not.").

● Owning and operating convenience stores is not 7-Eleven's regular business.

● Finally, Plaintiffs' testimony, documents they drafted, and the parties' contracts all confirm that the parties intended to establish an independent contractor relationship and performed accordingly for decades.

    **ii. Conduct Occurring After AB5 Took Effect Is Not Before The Court And Plaintiffs Could Not Prevail Even If It Was**

Although this Court has ruled that *Borello* applies to the entirety of Plaintiffs' § 2802 claim (Dkt. 275 at 10), Plaintiffs nevertheless argue that for conduct occurring after AB5 went into effect,[2] the ABC test should establish 7-Eleven's liability because AB5 expanded the scope of *Dynamex* to include all claims under the Labor Code. Their

---

[2]  AB5 was originally codified as Labor Code § 2750.3, effective January 1, 2020. Stats. 2019, ch. 296, § 2. Effective September 4, 2020, § 2750.3 was repealed and the statutory provisions pertinent to this dispute were transferred with no substantive changes to § 2775, subdivision (b). Stats. 2020, ch. 38, §§ 1–2.

4

argument fails for three reasons. First, because Plaintiffs' Complaint is based entirely on conduct occurring before AB5's January 1, 2020 effective date, AB5 (which the Court has held is not retroactive (*id.*)), does not apply to this lawsuit. Second, even if post-2019 conduct was before the Court, the ABC test would not apply to Plaintiffs. Third, even if the ABC test applied to such conduct, 7-Eleven would satisfy it.

*1. Conduct occurring before AB5's effective date is not before the Court.* Under the Labor Code, each alleged violation constitutes a new cause of action. *See Cuadra v. Millan*, 17 Cal. 4th 855, 859 (1988) ("A cause of action for unpaid wages accrues when the wages first become legally due, i.e., on the regular payday for the pay period in which the employee performed the work; when the work is continuing and the employee is therefore paid periodically (e.g., weekly or monthly) a separate and distinct cause of action accrues on each payday, triggering on each occasion the running of a new period of limitations.").[3] Therefore, while Plaintiffs might be able to seek continuing *damages* (if any) for violations that allegedly occurred prior to the filing of their Complaint, their Complaint does not (and logically cannot) encompass any alleged *violations* that occurred after the date of the Complaint. For that, Plaintiffs would need to move for leave to amend or supplement their Complaint. *See Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 739 (9th Cir. 1984) ("Plaintiffs may bring events occurring after the filing of the complaint into the scope of the litigation by filing a supplemental complaint with leave of court"); *Richtek Tech. Corp. v. uPi Semiconductor Corp.*, Case No. C 09-05659 WHA, 2016 WL 1718135, at *2 (N.D. Cal. Apr. 29, 2016) ("Thus, the filing of a complaint sets the cut-off date for the scope of a case, subject to the possibility of supplementation."); *Rembrandt Patent Innovations LLC v. Apple Inc.*, 2015 WL 8607390, at *2 (N.D. Cal. Dec. 13, 2015) ("In other words, the filing date of a complaint ordinarily determines the cut-off date for the scope of the case, and a party must seek leave to extend the case

---

[3]   Disapproved on other grounds by *Samuels v. Mix*, 22 Cal. 4th 1, 16 n.4 (1999).

to include claims based on facts that occurred after that date."). Plaintiffs have never sought to do so, and the time for filing any such motion has long since run. *See* Dkt. 235 (setting December 7, 2020 as the Motion Hearing Cut-off).

*2. Even if conduct after January 1, 2020 was at issue here, the ABC test would not apply to Plaintiffs.* Under Cal. Labor Code § 2775 (that is, AB5), the ABC test *only* applies to persons who "provid[e] labor or services for remuneration" by the hiring entity. Cal. Labor Code § 2775(b)(1); *People v. Uber Techs., Inc.*, 56 Cal. App. 5th 266, 286 (2020), as modified on denial of reh'g (Nov. 20, 2020), review filed (Dec. 1, 2020) (for ABC test to apply, remuneration must flow from putative employer to putative employee). If, and only if, Plaintiffs can satisfy this threshold requirement will the burden shift to 7-Eleven to demonstrate that all of the following conditions of the ABC test are satisfied:

> "(A) The [Plaintiffs are] free from the control and direction of [7-Eleven] in connection with the performance of the work, both under the contract for the performance of the work and in fact.
>
> (B) The [Plaintiffs] perform[] work that is outside the usual course of [7-Eleven's] business.
>
> (C) The [Plaintiffs are] customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed."

Cal. Lab. Code § 2775 (b)(1).

Plaintiffs cannot show that they provide services to 7-Eleven and receive remuneration from 7-Eleven, and accordingly cannot make the showing necessary to trigger the application of the ABC test.

7-Eleven will produce documentary evidence as well as expert testimony which demonstrates that, under the terms of its franchise agreements and as a matter of fact, Plaintiffs do not provide services to 7-Eleven, and 7-Eleven does not provide remuneration to Plaintiffs. In fact, as this Court has noted, the arrangement is the exact opposite – 7-Eleven provides services *to* Plaintiffs in exchange for remuneration *from* Plaintiffs. Dkt. 275 at 3 ("7-Eleven leases property and equipment to the franchisee and

grants a license to use 7-Eleven's trademarks and operating system . . . . In return, Plaintiffs must pay 7-Eleven a franchise fee and other fees, along with the '7-Eleven Charge'. . . ").

Even if Plaintiffs could prove they provide services to, and receive remuneration from, 7-Eleven, 7-Eleven will show that it is exempt from the requirements of § 2775 under the subsection that authorizes trial courts to prevent "wholly inappropriate" applications of the ABC test. *Uber Techs.*, 56 Cal. App. 5th at 289. Section 2775(b)(3) of the Labor Code specifically provides that: "[i]f a court of law rules that the three-part test in paragraph (1) cannot be applied to a particular context based on grounds other than an express exception to employment status as provided under paragraph (2), then the determination of employee or independent contractor status in that context shall instead be governed by the California Supreme Court's decision in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (Borello)." In *People v. Uber*, the California Court of Appeal held that this subsection creates "a threshold test designed to prevent wholly inappropriate application of the ABC test" by empowering courts to substitute the *Borello* test where "the ABC test 'cannot be applied to a particular context based on grounds other than' one of the express statutory exemptions. . . ." *Uber Techs.*, 56 Cal. App. 5th at 289, (quoting Cal. Labor Code § 2775, subd. (b)(3)). This Court should apply *Borello* here for at least two reasons.

First, there is an inherent conflict between the ABC Test on the one hand and the FTC's Franchise Rule, the Lanham Act, and the two California statutes that govern franchising on the other hand. While the ABC Test *precludes* the exercise of control, these statutes *require* that a franchisor exercise control over its franchisees. For example, the FTC defines a "franchise" as "any continuing commercial relationship" whereby a franchisee distributes goods or services under the franchisor's trademarks and "[t]he franchisor will exert or has authority to exert *a significant degree of control* over the franchisee's method of operation . . . " 16 C.F.R. § 436.1(h)(2) (emphasis added); *see also* Cal. Corp. Code § 31005(a)(1) (defining a "franchise," in part, as a

contract or agreement under which "[a] franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services *under a marketing plan or system prescribed in substantial part* by a franchisor" (emphasis added)). "It cannot be the case, as plaintiffs suggest, that, in qualifying as a franchisee pursuant to the FTC's definition, an individual necessarily becomes an employee. In effect, such a ruling by this Court would eviscerate the franchise business model, rendering those who are regulated by the FTC Franchise Rule criminally liable for failing to classify their franchisees as employees." *Patel v. 7-Eleven, Inc.*, Case No. 17-11414-NMG, 2020 WL 5440623, at *9 (D. Mass. Sept. 10, 2020) (granting summary judgment in 7-Eleven's favor under the same ABC test for this reason); *see also* April 29, 2019 Order (Dkt. 204) at 10 n.8 ("The Court notes that there may be significant unintended—and unforeseeable—consequences of any interference with California's franchise laws").

Second, 7-Eleven will present expert evidence showing that, if the ABC Test did apply in the manner Plaintiffs claim it should apply, it is likely that every business format franchisor (a category that includes 7-Eleven franchisees as well as many other recognized franchise chains such as McDonalds, Circle-K, and Dunkin Donuts) would be deemed the employer of its franchisees. 7-Eleven will also present expert evidence showing that this result – the wholesale transformation of every business format franchisee in California into an employee – would upend and eviscerate the contractual arrangements underpinning a massive sector of California's economy. For this reason too, the ABC Test "cannot be applied to [this] particular context." Cal. Labor Code § 2775(3); *see also Patel*, 2020 WL 5440623, at *9 (holding ABC Test should "not apply to 7-Eleven in these circumstances"); *Sebago v. Boston Cab Dispatch, Inc.*, 28 N.E.3d 1139, 1148 (Mass. 2015) (rejecting application of ABC test to business model that "was created in the context of a legislative mandate to regulate the taxicab industry" even though the rules governing the operation of taxicabs did not preempt the ABC test; "[n]othing the defendant ha[d] done [was] in violation of the statutorily conferred power" under the applicable rules, and the "[m]ere participation in that

system is insufficient to render medallion owners the presumptive employers of the drivers who lease their taxicabs.").

*3. Even if the ABC test applied here, 7-Eleven would show that it satisfies each prong of the test:*

- With respect to Prong A of the ABC Test, 7-Eleven will produce fact and expert testimony showing that the controls imposed by Plaintiffs' franchise agreements are (i) typical of those used by business format franchisors, and (ii) necessary to protect 7-Eleven's brand, as required by the FTC Rule and California law. 7-Eleven will also produce evidence showing that Plaintiffs retain significant discretion to operate their businesses in ways that allow them to make a considerable profit.

- With respect to Prong B of the ABC Test, 7-Eleven will produce fact and expert testimony showing that 7-Eleven's "usual course" of business is not the operation of retail stores. Rather, it is the development of, investment in, and maintenance of its business concept and brand, and the sale of licenses to use that business concept and brand. 7-Eleven will show that it earns the vast majority of its revenues from its franchise operations, and that it dedicates enormous resources, in terms of both personnel and funding, to marketing, selling, and maintaining its franchise brand. 7-Eleven will also show that its retail-oriented activities are designed to support its franchise brand by maintaining stores for sale to prospective franchisees, facilitating the training of franchise personnel, and providing laboratories for perfecting the brand.

- With respect to Prong C of the ABC Test, 7-Eleven will produce fact and expert testimony showing that Plaintiffs independently operate retail businesses, hire their own employees, and retain the discretion to maximize their own profit.  In addition, 7-Eleven will produce evidence that certain Plaintiffs have in the past and still

do operate other retail businesses with no connection to 7-Eleven (including other convenience stores).[4]

### iii. Even If Plaintiffs Are Employees, They Cannot Satisfy § 2802's Requirements

Finally, even if Plaintiffs could be deemed employees of 7-Eleven, the evidence at trial will show that they cannot recover under § 2802. Plaintiffs claim that this section entitles them to recover *all of the expenses they agreed in the Franchise Agreement would be their responsibility*, including all of their payroll expenses, all of their maintenance charges, and all of their advertising fees. *See* Ex. A at 3. They further contend that this Section entitles them to recover the franchise fees they paid, as well as the 7-Eleven Charge – the portion of store proceeds that Plaintiffs agreed to pay to 7-Eleven as consideration for granting Plaintiffs a license to use its trademarks and system, leasing the store premises and/or equipment used therein and providing ongoing operational support services. *Id.*

The upshot of Plaintiffs' reimbursement claim is that, using § 2802 as the vehicle, they seek to convert the Franchise Agreement into a purely one-sided affair in which they will enjoy *100% of the income and 7-Eleven will be saddled with 100% of the expenses.* For example, under their theory (and as reflected in the table below), Plaintiff Paul Lobana, who in 2016 earned $270,716 in net income across his three stores, would be entitled to "expense reimbursements" for that one year totaling *$1,628,000*, while 7-Eleven would be forced to take a commensurate loss.

---

[4]     Many of the 7-Eleven franchisees in California are business entities, rather than individuals. For example, the franchisee of Store No. 18394 is the Lobana Corporation, not Plaintiff Maninder "Paul" Lobana. Such business entities cannot be employees of 7-Eleven.

DEFENDANT/COUNTERCLAIM PLAINTIFF 7-ELEVEN, INC.'S
L.R. 16-4 MEMORANDUM OF CONTENTIONS OF FACT AND LAW

| Lobana 2016 | Store 16027 | Store 20014 | Store 18394 | Total |
|---|---|---|---|---|
| Total Net Income | $95,246.17 | $97,517.77 | $77,952.57 | $270,716.51 |
| ADDITIONAL INCOME IF REIMBURSED FOR CLAIMED "EXPENSES" | | | | |
| 7-Eleven Charge | $324,375.08 | $310,789.75 | $398,893.97 | $1,034,058.80 |
| Comp & Benefits (Payroll) | $160,274.80 | $147,290.08 | $203,579.53 | $511,144.41 |
| Maintenance | $16,665.72 | $14,593.44 | $21,716.62 | $52,975.78 |
| Advertising | $9,731.25 | $9,160.19 | $11,492.77 | $30,384.21 |
| TOTAL | $511,046.85 | $481,833.46 | $635,682.89 | $1,628,563.20 |

(Source: SEI-CA-0036497, 0037089, 0037658.)

Section 2802 cannot be construed to authorize such an economically unsustainable and grossly unfair result. The law does not allow Plaintiffs to dragoon 7-Eleven into operating as a charitable foundation for their benefit.

The California Supreme Court's decision in *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554 (2007) is instructive here. Speaking specifically with respect to § 2802, the Court noted that it "will apply common sense to the language at hand and interpret the statute to make it workable and reasonable." *Id.* at 567 (internal citation and quotations omitted). The court went on to reject an employee's claim that his employer violated § 2802 by failing to separately reimburse the employee's expenses. Instead, the court ruled that an employer may "discharge its reimbursement obligations" under § 2802 through the total compensation package received by the employee. *Id.* at 574. Here, Plaintiffs agreed, in their Franchise Agreements, to the formula for determining their total compensation, and they agreed exactly which costs would be their responsibility for purposes of determining that compensation. As a result, reimbursement for expenses is already "baked in" to the Franchise Agreement. *See* Dkt. 275 at 3 ("Franchisees retain all remaining gross profits from their store after paying the '7-Eleven Charge,' fees, and store expenses."). Because a proper construction of § 2802 must result in "wise policy rather than mischief or absurdity"

(*Gattuso*, 42 Cal. 4th at 567), Plaintiffs cannot use this section to effect a wholesale reallocation of the benefits and burdens of the Franchise Agreement.

Moreover, § 2802 only applies to "those expenditures or losses an employee must '*necessarily incur*' . . . in direct consequence of the discharge of his duties or in obedience to the directions of [the putative employer]." *USS-Posco Indus. v. Case*, 244 Cal. App. 4th 197, 205-06 (2016) (emphasis added); *see Gattuso*, 42 Cal. 4th at 568 (application of § 2802 depends on "whether each of those expenses was 'necessary,' which in turn depends on the reasonableness of the employee's choices"). Plaintiffs will be unable to prove that their claimed expenses were incurred at 7-Eleven's direction or otherwise "necessary." Indeed, one of the largest categories of Plaintiffs' claimed expenses – their payroll – was entirely their prerogative. 7-Eleven did not direct them to hire and pay anyone to work in their stores. As the franchise agreements and Plaintiffs' own testimony will reflect, Plaintiffs exercised complete control over all employment matters in their stores. They made their own decisions to hire others (including full-time managers) to perform tasks they could have chosen to perform themselves. Plaintiffs also decided how much to pay their employees, including whether to pay them above-market salaries (such as the salary Plaintiff Dhillon decided to pay his wife). Section 2802 was not intended to force a business like 7-Eleven to pay expenses that franchisees voluntarily choose to incur.

Section 2802 was enacted in 1937 as part of the original Labor Code. It was based on Civil Code § 1969, which was enacted in 1872. The proposition that this ancient statute was intended to be used in the manner that Plaintiffs advocate would surely come as a shock to its drafters.

### 2. <u>Declaratory Judgment That Releases Are Invalid and Unenforceable</u>

**a.** <u>**Summary**</u>: The releases signed by Plaintiffs Haitayan, Elkins and Lobana in connection with the renewal of their franchise agreements, which release all claims in this lawsuit, are supported by consideration, are not

unconscionable, were not obtained via fraud, duress, or coercion, and do not violate California law in any respect. 7-Eleven is entitled to their enforcement.

**b.**   **Elements:** "The elements required to establish a claim for declaratory judgment are (1) a substantial controversy exists (2) between parties having adverse legal interests and (3) of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Baker v. Baker*, Case No. 16-cv-08931 VAP (JPRx), 2018 WL 3216509, at *8 (C.D. Cal. June 27, 2018) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). "'A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest.'" *Van Gessel v. Moore*, Case No. 1:18-cv-01478-DAD-GSA-PC, 2021 WL 106469, at *1 (E.D. Cal. Jan. 12, 2021) (quoting *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948)).

**c.**   **Key Evidence in Opposition to Claim and Related Issues of Law:**

Courts generally uphold releases in the absence of fraud, coercion, or duress. *See* Dkt. 55 [*Haitayan II*] at 7. There is no evidence that 7-Eleven obtained these releases through such means — indeed, Plaintiffs were represented by counsel when they voluntarily executed the releases. And this Court has already held, repeatedly, that it is not "unconscionable or impermissibly coercive for a franchisor to require a release of claims as a condition of renewing a franchise agreement." *E.g.*, *id.* at 4-5.

Plaintiffs contend that regardless of the foregoing, Labor Code § 2804 bars the release of their claim under Labor Code § 2802. They are wrong. Section 2804 provides that "[a]ny contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void." In *Villacres v. ABM Industries, Inc.*, 189 Cal. App. 4th 562 (2010), the California Court of Appeal held that § 2804 does not prevent the enforceability of releases of past claims for § 2802 violations that are supported by consideration. *Id.* at 591. The court held that defendants "did not entice or force Villacres . . . to waive future claims or, for that matter, to waive

any claims without compensation . . . A release of that nature is *legally distinguishable from an unlawful waiver of statutory rights. Were it otherwise, a suit alleging a wage claim could be resolved only through a dispositive motion or trial*." *Id.* (emphasis added) (internal citation omitted); *see also Aguilar v. Zep*, Case No. 13-cv-00563, 2014 WL 1900460, at **5-6 (N.D. Cal. May 12, 2014) (same).

The releases Plaintiffs chose to sign were supported by two forms of consideration. First, Plaintiffs received the valuable opportunity to renew their franchise agreements for 15 years, an opportunity 7-Eleven was not obligated by law to offer. *See* April 29, 2019 Order (Dkt. 204) at 10 n.8. A cash payment is not required for the release of Labor Code claims. *See Aleman v. Airtouch Cellular*, 209 Cal. App. 4th 556, 578 (2012) (Labor Code claim validly settled not by cash but by the right to a contractual benefit). Second, Plaintiffs each received a cash payment of $250. Plaintiffs' contention that this payment is insufficient is meritless, because (1) it ignores the other valuable consideration they received, and (2) in any event, courts do not inquire into the adequacy of consideration in connection with contracts generally and releases specifically. *Schumm by Whyner v. Berg*, 37 Cal. 2d 174, 185 (1951) ("the law will not enter into an inquiry as to the adequacy of the consideration"); *Kremen v. Cohen*, 337 F.3d 1024, 1028 (9th Cir. 2003) ("[t]he adequacy of consideration doesn't matter, but it must be 'something of real value'" (internal citation omitted)); *Moore v. Rogers*, 157 Cal. App. 2d 192, 196 (1958) ("[a]ny inadequacy of consideration, while it may be considered in connection with other circumstances, is not in itself sufficient to set aside a written release.").

Moreover, if the releases are deemed unenforceable, Plaintiffs' 2019 Franchise Agreements must be rescinded and voided. Execution of the releases was a condition precedent to 7-Eleven's granting of a renewal Franchise Agreement. *See* April 29, 2019 Order (Dkt. 204), at 11 n.11 (questioning "whether 7-Eleven would be required to renew the agreements at all if the Court eliminated the disputed release.").

1

### 3. Cal. Bus. & Prof. Code §17200

**a.** <u>**Summary**</u>: Plaintiffs contend that 7-Eleven's purported violations of Cal. Labor Code § 2802, and its "collection" of releases (supposedly in violation of Cal. Labor Code §§ 206.5, 2804, 98.6 and 110.25) also constitute unfair and unlawful business practices in violation of Cal. Bus. & Prof. Code §17200.

**b.** <u>**Elements**</u>: "The elements of a cause of action for violation of Section 17200 are an unlawful, unfair, or fraudulent business practice or act" by the defendant. *Chundu v. Cork*, Case No. G55326, 2018 WL 6039686, at *5 (Cal. Ct. App. Nov. 19, 2018) (citing *Zhang v. Superior Court*, 57 Cal. 4th 364, 370 (2013)). Section 17200 "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation omitted).

**c.** <u>**Key Evidence in Opposition to Claim and Related Issues of Law**</u>:

Plaintiffs' § 17200 claims are based on the same purported conduct and evidence as their claims under California Labor Code § 2802 and for declaratory judgment. Therefore, the key evidence in opposition to the § 17200 claim and related issues of law are the same as those discussed in Sections I.A.1.c and 1.A.2.c, *supra*, and Plaintiffs' § 17200 claim fails for the same reasons set forth therein.

### B. 7-Eleven's Affirmative Defenses and Counterclaim

#### 1. Affirmative Defense: Release

*See* Section I.A.2. above.

#### 2. Affirmative Defense: Estoppel

**a.** <u>**Summary**</u>: 7-Eleven asserts that Plaintiffs are equitably estopped from seeking recovery under Cal. Labor Code § 2802 of any purported expenses that Plaintiffs listed as deductible business expenses on their tax returns.

**b.** <u>**Elements**</u>: Estoppel prevents a party "'from gaining an

15

advantage by taking one position, and then seeking a second advantage by taking an incompatible position.'" *Marks v. Am. Airlines, Inc.*, 313 Fed. Appx. 933 (9th Cir. 2009) (quoting *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996)); *see also Carpet Supermarket, Inc. v. Nat'l Fire Ins. Co. of Hartford*, Case No. CV 09-4951 GAF, 2009 WL 10675718, at *1 (C.D. Cal. Sept. 17, 2009) (Where an individual has taken one position on his tax returns and gained a benefit thereby, he is estopped from "seeking another benefit in court by taking a position incompatible with that taken on the tax return.").[5]

### c.   Key Evidence in Support of Defense and Related Issues of Law:

The evidence at trial, consisting primarily of Plaintiffs' admissions, will show that the Plaintiffs listed themselves (under penalty of perjury) as the sole proprietors of their respective franchised businesses on their tax returns, and derived significant financial benefits by listing certain business expenses as deductions from their gross incomes. Plaintiffs' pleadings and evidence in support of their claims under Cal. Labor Code § 2802 demonstrate that they have taken an inconsistent position in this action by claiming they are employees rather than business owners, and through that inconsistent position, are seeking a second advantage – reimbursement of the "expenses" they deducted on their tax returns. The law estops them from doing so.

### 3.   Affirmative Defense: Waiver

**a.   Summary:** Plaintiffs waived their right to bring these lawsuits by entering into the 2019 Franchise Agreements after they filed the lawsuits.

**b.   Elements:** Waiver is the intentional relinquishment of a known right, after knowledge of the facts. *Roesch v. De Mota*, 24 Cal. 2d 563, 572 (1944). Waiver may be express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right. *Wind Dancer Production*

---

[5]   7-Eleven acknowledges that the Court previously held that its estoppel defense "does not support summary judgment. . . ." Dkt. 222 at 9.

*Group. v. Walt Disney Pictures*, 10 Cal. App. 5th 56, 78 (2017).

### c.   Key Evidence in Support of Defense and Related Issues of Law:

Plaintiffs filed their lawsuit in October 2017, contending that they are employees of 7-Eleven who are entitled to reimbursement of millions of dollars in "expenses" that they agreed to bear under their Franchise Agreements. *After* plaintiffs filed their lawsuit, and while represented by counsel, Plaintiffs knowingly and voluntarily entered into renewal franchise agreements, under which they (1) *agreed* that they were independent contractors, and (2) *agreed* to bear all of the costs for which they seek reimbursement (in exchange for all the benefits 7-Eleven provided them). Plaintiffs' conduct in entering into these agreements, and retaining their benefits, is irreconcilable with their claims and warrants an inference of an intent to relinquish their claimed rights.

### 4.   Affirmative Defense: Statute of Limitations

**a.   Summary**: To the extent Plaintiffs seek to recover expenses they purportedly incurred during the period outside of the applicable statutes of limitations, they are barred from doing so.

**b.   Elements**: Plaintiffs' claims under Cal. Labor Code § 2802 accrued more than three years before they commenced this action; and Plaintiffs' claims under Cal. Bus. & Prof. Code § 17200 accrued more than four years before they commenced this action. Cal. Code Civ. Proc. § 338, subd. (a); Cal. Bus. & Prof. Code §§ 17203, 17208; *Brandon v. National R.R. Passenger Corp. Amtrak*, Case No. CV 12-5796 PSG (VBKx), 2013 WL 800265, at *23 (C.D. Cal. Mar. 1, 2013).

### c.   Key Evidence in Support of Defense and Related Issues of Law:

Plaintiffs commenced this action on October 12, 2017. The statute of limitations bars any claims under Cal. Labor Code § 2802 that accrued prior to October 12, 2014

and any claims under Cal. Bus. & Prof. Code § 17200 that accrued prior to October 12, 2013. The financial records pertaining to the Plaintiffs' franchised stores reflect the dates on which their claimed expenses were purportedly incurred.

### 5.   Affirmative Defense: Unclean Hands

**a.   Summary:** Plaintiffs have engaged in inequitable conduct that relates to, and bars, their claims of misclassification, their claims that 7-Eleven must reimburse the operating expenses of their franchised businesses, and their claims that the releases they signed were invalid.

**b.   Elements:** "To prevail [on an unclean hands defense], the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987).

**c.   Key Evidence in Support of Defense and Related Issues of Law:**

The evidence at trial will show that each of the Plaintiffs entered into a franchise agreement with 7-Eleven in which they, among other things, agreed to hold themselves out to the public as independent contractors and to be responsible for certain operating expenses of their franchised stores. The evidence will further show that, during this litigation, and while represented by counsel, Plaintiffs Haitayan, Elkins and Lobana each entered into new franchise agreements with 7-Eleven in which they once again agreed to hold themselves out as independent contractors and be responsible for certain operating expenses of their franchised stores. They also agreed to release any claims they may have against 7-Eleven. Having agreed to the above, it is inequitable for Plaintiffs to continue pursuing claims against 7-Eleven which assert that: (i) they are not independent contractors; (ii) 7-Eleven is obligated to pay the operating expenses of their franchised stores; and (iii) the releases that Plaintiffs signed are invalid. Such claims are barred by the doctrine of unclean hands. *See POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 109192 (C.D. Cal. 2016) (quoting *Dollar Sys., Inc. v.*

*Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989)) ("Though equitable in nature, the unclean hands doctrine bars claims for money damages as well as those for equitable relief. . . . The doctrine of unclean hands 'bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted.'" (citation omitted)).

### 6.   <u>Affirmative Defense: Joint Employers</u>

a.   <u>Summary</u>: If 7-Eleven is found to be the employer of, and liable to, any Plaintiff who operates his franchise through a business entity, such business entity franchisee will be jointly and severally liable as their joint employer.

b.   <u>Elements</u>: *See* Sections I.A.1.b and I.A.3.b, above.

c.   **Key Evidence in Support of Defense and Related Issues of Law:**

The evidence will show that Plaintiff Lobana operates one or more franchises through a business entity franchisee. To the extent 7-Eleven is deemed to be an employer of Mr. Lobana, the related business entity franchisee must be deemed his joint employer and therefore jointly and severally liable for his claimed damages.

### 7.   <u>Counterclaim: Declaratory Judgment</u>

a.   <u>Summary of 7-Eleven's Counterclaim</u>:   If Plaintiffs are deemed employees, the Court should enter a declaratory judgment declaring 7-Eleven's franchise agreement void or rescinded on the grounds of impracticability of performance, frustration of purpose and mutual mistake.

b.   <u>Elements:</u>

•   <u>Impracticability of Performance</u>: To prevail on an impracticability theory, 7-Eleven must prove that its performance has been made "[1] impracticable [2] without [its] fault [3] by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made . . . ." Restatement (Second) of Contracts

§ 261 (1981). Performance "is impracticable when it can only be done at an excessive and unreasonable cost." *Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1336 (2009).

• Frustration of Purpose: To prevail on a frustration of purpose theory, 7-Eleven must "[1] prove that the risk of the frustrating event was not reasonably foreseeable and [2] that the value of counter performance is totally or nearly totally destroyed." *Bear, LLC v. Marine Grp. Boat Works, LLC*, Case No. 3:14-CV-02960-BTM, 2015 WL 4255061, at *2 (S.D. Cal. July 14, 2015) (quoting *Waegemann v. Montgomery Ward & Co.*, 713 F.2d 452, 454 (9th Cir. 1983)).

• Mutual Mistake: To prevail on a mutual mistake theory, 7-Eleven must prove "[1] a mutual mistake, whether of fact or law, [2] which affects an essential element of the contract and [3] is harmful to one of the parties . . . ." *Guthrie v. Times-Mirror Co.*, 51 Cal. App. 3d 879, 883-84 (1975); Cal. Civ. Code §§ 1576, 1578.

### c.   Key Evidence in Support of Counterclaim and Related Issues of Law:

An examination of Plaintiffs' own franchise agreements and testimony from 7-Eleven's witnesses will show that, if Plaintiffs prevail and receive an order requiring 7-Eleven to reimburse Plaintiffs for their payroll, maintenance fees, advertising fees, and 7-Eleven Charge, then Plaintiffs will be entitled to use 7-Eleven's marks and access 7-Eleven's goodwill, advertising, and assistance, for free. This result – the transformation of the franchise agreements into a one-way arrangement where 7-Eleven provides money, licensing rights, and support to Plaintiffs and receives nothing at all in return – will: (a) impose an excessive and unreasonable cost of performance on 7-Eleven; (b) totally destroy the value of the counter-performance to which 7-Eleven is entitled; and (c) alter the essence of the franchise agreements in a way that inflicts economic harm on 7-Eleven. 7-Eleven will also introduce evidence, including franchise agreement terms and testimony, demonstrating that this result was not what the contracting parties intended and was entirely unforeseeable at the time the franchise

agreements were made. *See* April 29, 2019 Order (Dkt. 204), at 11 n.11 (questioning "whether any portion of the franchise agreements would survive a finding that Plaintiffs are employees rather than independent contractors.").

## II.   ANTICIPATED EVIDENTIARY ISSUES (L.R. 16-4.1(H))

First, 7-Eleven anticipates that Plaintiffs will attempt to introduce evidence of conduct that occurred after the date on which they filed their complaint. However, such post-complaint conduct is not within the scope of this action because Plaintiffs have neither sought, nor received, the Court's leave to file a supplemental pleading to bring such conduct into the action. *See Los Angeles Branch NAACP.*, 750 F.2d at 739 ("[t]he scope of litigation is framed by the complaint at the time it is filed . . . Plaintiffs may bring events occurring after the filing of the complaint into the scope of the litigation by filing a supplemental complaint with leave of court."). Therefore, 7-Eleven will object to and seek the exclusion of any evidence concerning conduct or events that occurred after Plaintiffs filed their complaint.[6]

Second, 7-Eleven anticipates that Plaintiffs will attempt to introduce documents that they failed to produce, and failed to otherwise disclose, at any time prior to the parties' exchange of trial exhibits on February 5, 2021. Over 1,200 of the 1,380 documents set forth on Plaintiffs' February 5 trial exhibit list were not previously produced or disclosed. Plaintiffs' anticipated attempt to introduce such documents would constitute trial by ambush and, therefore, 7-Eleven will object to and seek the exclusion of such documents.

## III.   BIFURCATION OF ISSUES (L.R. 16-4.3)

7-Eleven does not seek any bifurcation of issues during trial.

7-Eleven anticipates that Plaintiffs will seek to bifurcate the issues of liability and damages. 7-Eleven objects to any such bifurcation because the merits of Plaintiffs'

---

[6]   As the Court correctly noted during the December 28, 2020 conference, the law does not bar recovery of damages that result from pre-complaint conduct and continue after the date of the complaint. 12/28/20 Hrg. Tr. 24:10-25:11. Evidence of such continuing damages, if any, is not within the scope of 7-Eleven's anticipated objection, which is limited to post-filing conduct.

claims are inseparable from the nature and amount of the damages they seek. For example, to succeed under Cal. Labor Code § 2802, Plaintiffs must prove (among other things) that the expenditures underlying their claims (i) were incurred in direct consequence of the discharge of their duties, or obedience to the directions of the 7-Eleven and (ii) were reasonable and necessary. Thus, in order to determine the merits of Plaintiffs' claims, the Court will need to assess, and consider evidence concerning, Plaintiffs' claimed damages. Bifurcation of the trial into separate liability and damages phases would be both inefficient and prejudicial to 7-Eleven's defense of those claims.

## IV.  JURY TRIAL (L.R. 16-4.4)

No portion of this case will be tried to a jury.

## V.  ATTORNEYS' FEES (L.R. 16-4.5)

7-Eleven is entitled to recover attorneys' fees from Plaintiffs Haitayan, Elkins and Lobana. Each of those Plaintiffs agreed, in Paragraph 30(c) of their franchise agreements, that "[i]f we incur costs and expenses (internal and external) to enforce our rights or your obligations under this Agreement, you agree to reimburse all costs and expenses we incur, including, without limitation, reasonable accounting, attorneys', arbitrators' and related fees." Plaintiffs are obligated to reimburse 7-Eleven for the costs and fees, including reasonable attorneys' fees, that 7-Eleven has incurred in this action to enforce its rights and Plaintiffs' obligations under their respective franchise agreements, including 7-Eleven's rights under the Release of Claims and Termination (Exhibit H to the franchise agreements) and Plaintiffs' obligations to hold themselves out to the public as independent contractors (Paragraph 2 of the franchise agreements).

## VI.  ABANDONMENT OF ISSUES (L.R. 16-4.6)

Plaintiffs have abandoned their wage order claim (Count 4 of FAC, Dkt. 24), and appear to have abandoned their § 17200 and declaratory judgment claims as well. *See, e.g.*, Dkt. 279 ("the only claim left for trial in March is Plaintiffs' Section 2802 claim."). Additionally, the Court previously entered summary judgment for 7-Eleven

on (1) Plaintiffs' overtime claims (Counts 1, 2 of FAC, Dkt. 24); and (2) Plaintiffs' retaliation claims (Counts 3 and, to the extent it is based on a retaliation theory, 4 of FAC, Dkt. 48, [*Haitayan II*]).

Dated: February 11, 2021.                    ARNOLD & PORTER KAYE SCHOLER LLP


                                             By: /s/ James F. Speyer
                                                 JAMES F. SPEYER
                                                 MATTHEW D. GRANT
                                                 Attorneys for Defendant 7-Eleven, Inc.

Dated: February 11, 2021.                    DLA PIPER LLP (US)

                                             By: /s/ Norman M. Leon
                                                 NORMAN M. LEON
                                                 MATTHEW J. IVERSON
                                                 Attorneys for Defendant 7-Eleven, Inc.